IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

CHARLES D. DECKER,

        Petitioner,

    Vs.                        No. 11-3069-SAC

RAY ROBERTS, Kansas
Secretary of Corrections,

        Respondent.

MEMORANDUM AND ORDER

        This matter comes before the court on a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (Dk. 1). The petitioner, Charles D. Decker, is incarcerated in Hutchinson Correctional Facility serving a sentence of 246 months' imprisonment. Decker's petition claims his constitutional right to a fair trial was denied by prosecutorial misconduct and judicial misconduct, his constitutional right to effective assistance of counsel at trial and on direct appeal was denied, his constitutional right to due process during post-conviction proceedings was denied by ineffective counsel, and he is actually innocent of the offenses of conviction.

        In response to the court's show cause order (Dk. 2), the respondents filed their answer and return (Dk. 10) and forwarded for the court's review the relevant state court records (Dk. 11). The petitioner then

filed a traverse (Dk. 14), a brief in support (Dk. 15) and a supplement challenging the constitutionality of 28 U.S.C. § 2254(j) (Dk. 16).

**PROCEDURAL HISTORY**

Following a jury trial in the District Court of Sedgwick County, Kansas, the petitioner was convicted of two counts of aggravated criminal sodomy against a 9-year old girl and one count of aggravated indecent liberties with a child. The trial court sentenced Decker to consecutive terms of 123 months' imprisonment for each aggravated sodomy conviction and a concurrent term of 61 months for the aggravated indecent liberties conviction. The resulting sentence was 246 months. On direct appeal, the petitioner argued insufficient evidence to sustain convictions, the improper admission of rebuttal evidence, and the denial of a departure sentence. His conviction was affirmed by the Kansas Court of Appeals. *State v. Decker*, 140 P.3d 452, 2006 WL 2440004 (Kan. App. Aug. 18, 2006) (unpub. op.), *rev. denied*, 282 Kan. 793 (Dec. 19, 2006).

On December 17, 2007, the petitioner filed *pro se* a motion for relief under K.S.A. 60-1507 in Sedgwick County District Court. His motion was approximately 40 pages. (Rec. 07-CV-4710, pp. 8-48). The petitioner was appointed counsel in January of 2008, but in June, the petitioner moved to dismiss this counsel. The district court appointed new counsel for petitioner who appeared before the court on December 8, 2008. Counsel summarized and argued the many issues set out in the 1507 motion and

concluded that these issues could not be resolved without an evidentiary hearing, and so he requested one. From the bench, the district court found "that the motions, files and records conclusively show that the movant is not entitled to the relief requested" and so "dismiss[ed] the case for the reasons set forth in the State's response." (Rec. Vol. 8, Trans. of 1507 Hearing, p. 30). The district court later filed its order denying the motion. (Rec. 07-CV-4710, pp. 66-70).

The petitioner appealed and the Kansas Court of Appeals affirmed the denial of the 1507 motion. *Decker v. State*, 242 P.3d 1281, 2010 WL 4977152 (Nov. 19, 2010), *rev. denied*, 291 Kan. No. 3 (xvii) (Jan. 18, 2011). The Kansas Court of Appeals found the petitioner to have waived or abandoned many of the allegations found in his *pro se* 1507 motion:

> On December 17, 2007, Decker filed a pro se K.S.A. 60-1507 motion. He made four general allegations: prosecutorial misconduct, judicial misconduct, ineffective assistance of trial counsel, and ineffective assistance of appellate counsel. On appeal, however, Decker raises only ineffective assistance of trial counsel. As a result, the remaining allegations are deemed waived or abandoned. *See State v. Martin*, 285 Kan. 994, 998, 179 P.3d 457, *cert. denied*, ---U.S.---, 129 S.Ct. 192, 172 L.Ed.2d 138 (2008).
>
> With regard to ineffective assistance of trial counsel, Decker's pro se motion alleged 20 instances of ineffectiveness by Cooper. On appeal, however, Decker argues only some of these instances, leaving the majority of complaints he raised at the district court level unaddressed. These unaddressed ineffective assistance of trial counsel allegations are also deemed waived or abandoned. 285 Kan. at 998, 179 P.3d 457.

2010 WL 4977152 at *1. The Kansas Court of Appeals also found that as to Decker's remaining ineffective assistance of counsel claims, he had

presented only conclusory arguments that did not justify an evidentiary hearing, and the state court records conclusively show that he was not entitled to any relief. *Id.* at *2-*4.

Petitioner then filed this pending petition for habeas corpus relief pursuant to 28 U.S.C. § 2254.

**FACTS**

The court is to presume the state court's factual determinations are correct, unless the petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The petitioner has not carried that burden nor proffered any evidence even approaching that burden. Thus, the court adopts the following facts as taken from the Kansas Court of Appeals' opinion affirming his conviction:

> Decker was charged with one count of aggravated indecent liberties with a child and two counts of aggravated criminal sodomy with a 9-year-old victim, C.B.S. Decker and Jamie, C.B.S.'s mother, dated for a while. When he lost his job and could not afford his own apartment, Decker moved in with Jamie and her children.
>
> In January 2004, Jamie started taking Monday night classes at Baker University, and Decker offered to babysit the children. Until then, C.B.S. had been a straight-A student. Sometime after January 2004, her teacher called for a parent-teacher conference and told Jamie that C.B.S.'s grades were plummeting, she was having difficulty in school, and she had stolen something at school. Even though Jamie saw big changes in C.B.S.'s behavior, she never suspected there were any problems with Decker.
>
> A babysitter informed Jamie that C.B.S. had told her that Decker was having sex with her; Jamie rushed home and talked privately with C.B.S. in a bedroom. C.B.S. then told Jamie that Decker had been having sex with her and said that Decker had licked her breasts and had anal sex with her, which hurt "really, really bad."
>
> Jamie found Decker asleep on the back porch and started kicking his legs, asking how long he had been having sex with her 9-year-old

daughter. Decker initially stated he did not know what she was talking about but eventually admitted he had licked C.B.S., had anal sex with her with his finger, and had rubbed his penis over her genitals. Decker begged Jamie for forgiveness and told her that he would get help and he would never touch C.B.S. again. Jamie told him to leave her house.

Decker called Jamie several times after he had left, saying he was embarrassed, telling her not to tell his family, and admitting he was addicted to pornography. Decker also tried to blame the incidents on C.B.S., stating she sat on his lap and touched herself.

Diana Schunn, a sexual assault nurse examiner examined C.B.S. in September 2004. Schunn stated C.B.S. called her vaginal area her "thingy" and her anus or anal opening her "bottom." During her examination, C.B.S. told Schunn that Decker had touched her breasts with his lips, her vagina with his penis and mouth, and her anus with his hand and penis on more than one occasion. C.B.S. stated she had pain once to her anus. C.B.S. also told Schunn that she was relieved when she found that she was not pregnant. Schunn found no acute or healed trauma to her genital area or to her anus at the time of the examination, but she stated it was rare to find physical injuries in pediatric patients of sexual abuse cases.

Ginny Hall, an officer at the Derby Police Department, obtained and served a search warrant for Jamie's house. Hall seized Decker's computer and boxes of computer disks containing pornography.

The case was tried to the jury in March 2005. On the first day of the trial, C.B.S. testified that Decker touched her vagina and anus with his hand over her clothes in her mother's bedroom. C.B.S. stated that Decker touched her breasts over clothes one time in the office. C.B.S. also stated that Decker touched her anus in the office, but she had trouble talking about it. C.B.S. stated that Decker placed her on his lap, unzipped his pants, and her anus hurt when he put his penis it. She stated "water stuff" came out of his penis while she was still on his lap.

On the second day of the trial, C.B.S. testified that Decker touched her vagina and anus with his mouth in her mother's bedroom. C.B.S. stated that her jeans were down around her knees, but she did not remember how that happened. C.B.S. stated that Decker put his penis in her mouth more than once in her mother's room. C.B.S. stated that these incidents happened a lot on Monday nights while her mother was gone. Decker showed C.B.S. pictures of people having sex on his computer. Decker made C.B.S. promise that she would not to tell anyone about the sex.

Decker's cross-examination brought out from C.B.S. that she did not want him to be part of her family, and she wanted to move back in with her father. Jamie testified that while she was separated from her

husband and in the process of divorce, C.B.S. was upset when she found out Decker stayed overnight at her house.

Decker testified on his own behalf. He moved in with Jamie in October 2003, and at that time he was trying to start his own business helping people with their computers. After his business failed to take off, he sought employment in various places, including a car dealership, a cable company, and a mortgage broker. However, Decker always made sure that he was off work on Monday nights so that he could take care of the children after Jamie had started schooling.

Decker denied that he was ever alone with C.B.S. in the bedroom without Jamie present. Decker stated that C.B.S. became upset when she found out he stayed overnight with Jamie. Decker never asked C.B.S. to come into his office or showed her any pictures on his computer. Although the rule was that children should be supervised while they got on the computers, Decker found C.B.S. on the computer without his permission. Decker denied all of the sex act allegations and responded that the thought of someone who would do such an act made him sick to his stomach.

On the night of their confrontation about these allegations, he said he and Jamie talked at the kitchen table. Decker said he was "rather astonished" at the accusations because it was something he never expected anybody to ever say to him. He told Jamie he had no idea what she was talking about and that he had never been involved in anything of that nature. Decker stated Jamie was not angry and she did not yell or kick him on the back porch. Decker denied admitting to Jamie that he put his finger inside C.B.S.'s anus or used his tongue to penetrate her vagina. Decker stated he never begged Jamie not to kick him out of the house or asked her to give him money.

Decker testified that he was not aware of the content of the boxes or CDs found in the garage of the house when the prosecutor told him that the CDs showed young adult women dressed as babysitters and cheerleaders engaging in sexual acts. Decker stated he had no boxes containing pornographic CDs and he had not regularly viewed pornography on his computer.

The State called Officer Hall as a rebuttal witness. Hall described how she found seven boxes containing hundreds of CDs showing young adult women dressed in childlike garments with ponytails and pigtails and with props such as baby bottles and lollipops. Hall stated these boxes had computer printout labels indicating not to open the boxes. In turn, Jamie testified those boxes did not belong to her, her children, or her mother; she assumed they were Decker's. Decker testified that he did not pack the boxes containing the CDs, and he had no idea to whom the boxes belonged.

The jury convicted Decker of one count of aggravated indecent liberties and two counts of aggravated criminal sodomy.

2006 WL 2440004 at *1-*3.

## AEDPA STANDARD OF REVIEW

This matter is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA imposes a "highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 130 S. Ct. 1855, 1862 (2010) (citation and internal quotation marks omitted). Under AEDPA, where a state prisoner presents a claim in habeas corpus and the merits were addressed in the state courts, a federal court may grant relief only if it determines that the state court proceedings resulted in a decision (1) "that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary to clearly established Federal law" when: (a) the state court "'applies a rule that contradicts the governing law set forth in [Supreme Court] cases'"; or (b) "'the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Maynard v. Boone*, 468 F.3d 665, 669 (10th Cir. 2006) (quoting

*Williams v. Taylor*, 529 U.S. 362, 405 (2000)), *cert. denied*, 549 U.S. 1285 (2007). A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct legal rule from Supreme Court case law, but unreasonably applies that rule to the facts. *Williams*, 529 U.S. at 407–08. Likewise, a state court unreasonably applies federal law when it either unreasonably extends, or refuses to extend, a legal principle from Supreme Court precedent where it should apply. *House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008), *cert. denied*, 555 U.S. 1187 (2009).

        In reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Rather than issuing whenever a state court errs or is incorrect in applying clearly established federal law, the writ is reserved for when the state court's application is "objectively unreasonable." *Renico v. Lett*, 130 S. Ct. at 1862. "This distinction creates a substantially higher threshold for obtaining relief than *de novo* review." *Id.* (internal quotation marks and citation omitted). "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard,* 468 F.3d at 671.

        When factual issues are raised in the § 2254 proceeding, the habeas court shall not grant relief unless the state court decision "was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Pursuant to § 2254(e)(1), the habeas court must presume the state court's factual determinations are correct, and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

**PETITION**

The petitioner sets out seven grounds for relief: (1) numerous allegations of prosecutorial misconduct at trial; (2) allegations of judicial misconduct by the trial and sentencing court; (3) ineffective assistance of trial counsel; (4) ineffective assistance of counsel on direct appeal; (5) ineffective assistance of counsel appointed for post-conviction proceedings before district court; (6) ineffective assistance of counsel appointed for post-conviction proceedings before appellate courts; and (7) actual innocence.

The petitioner raised the first four grounds in his *pro se* motion for relief under K.S.A. 60-1507 filed in Sedgwick County District Court on December 17, 2007. (Rec. 07-CV-4710, pp. 8-48). Before the district court, his appointed counsel orally argued the substance of all four grounds as presented in the *pro se* 1507 motion. He referred to most, if not all, of the individual arguments and also mentioned the petitioner's numerous citations to the record. Counsel encouraged the district court to take the matter under

advisement, as the *pro se* motion raised at least 41 separate arguments and the record citations justified further review. (Rec. Vol. 8, pp. 21-22). Counsel also argued that several issues raised questions of fact that could not be resolved without an evidentiary hearing. The district court denied the motion from the bench and filed a written order further explaining its decision. *Id.* at 28-30; No. 07-4710, pp. 66-70).

Counsel was appointed to represent the petitioner on his appeal from the denial of his 1507 motion. Appointed counsel filed the petitioner's brief on November 25, 2009, and the state filed its brief on March 10, 2010. The case was assigned to the appellate court's summary calendar on April 2, 2010. Mr. Decker then filed a motion to file a *pro se* supplement brief on May 24, 2010, or nearly six months after his original brief and nearly eight weeks after the state's response. His motion was promptly denied. In its eventual decision filed on November 19, 2010, the Kansas Court of Appeals, in part, found:

> On December 17, 2007, Decker filed a pro se K.S.A. 60–1507 motion. He made four general allegations: prosecutorial misconduct, judicial misconduct, ineffective assistance of trial counsel, and ineffective assistance of appellate counsel. On appeal, however, Decker raises only ineffective assistance of trial counsel. As a result, the remaining allegations are deemed waived or abandoned. *See State v. Martin*, 285 Kan. 994, 998, 179 P.3d 457, *cert. denied* ––– U.S. -––, 129 S.Ct. 192, 172 L.Ed.2d 138 (2008).

*Decker v. State*, 2010 WL 4977152 at *1.

## PROCEDURAL DEFAULT

Based on the above ruling by the Kansas Court of Appeals that the petitioner had waived certain claims by not raising them in his 1507 appeal, the respondent argues that the petitioner has procedurally defaulted his claims of prosecutorial and judicial misconduct and ineffective assistance of appellate counsel. This state court ruling, according to the respondent, finds the petitioner to have defaulted these claims on an independent and adequate state ground as to bar them from a federal habeas court's review. Respondent denies the petitioner can show any exception to apply here.

A federal habeas court may not review a state court decision that rests on a state law ground which "is independent of the federal question and is adequate to support" the decision. *Barker v. McKune*, 2013 WL 100127 at *4 (D. Kan. 2013) (citing *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). The Tenth Circuit recently summarized this procedural bar:

> "[F]ederal habeas review ... is barred" in any case "in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule[,] . . . unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).
> "If a particular claim was 'defaulted in state court on an independent and adequate state procedural ground,' we recognize the state courts' procedural bar ruling and do not address the claim on the merits 'unless cause and prejudice or a fundamental miscarriage of justice is shown.'" *Johnson v. Champion*, 288 F.3d 1215, 1223 (10th Cir. 2002) (quoting *Maes v. Thomas*, 46 F.3d 979, 985 (10th Cir.

11

> 1995)). To be independent, the procedural ground must be based solely on state law. *English v. Cody*, 146 F.3d 1257, 1259 (10th Cir. 1998). To be adequate, the procedural ground "must be strictly or regularly followed and applied evenhandedly to all similar claims." *Sherrill v. Hargett*, 184 F.3d 1172, 1174 (10th Cir. 1999).

*Thacker v. Workman,* 678 F.3d 820, 835 (10th Cir. 2012), *cert. denied*, 133 S. Ct. 878 (2013).

For "cause," the petitioner must show some "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). "Such an external factor might, for example, be proven by a 'showing that the factual or legal basis for a claim was not reasonably available to counsel, … or that some interference by officials made compliance impracticable." *Scott v. Mullin*, 303 F.3d 1222, 1228 (10th Cir. 2002) (quoting *Murray*, 477 U.S. at 488). "'Ineffective assistance of counsel [at trial or on direct appeal], …, is cause for procedural default.'" *United States v. Challoner*, 583 F.3d 745, 749 (10th Cir. 2009) (quoting *Murray*, 477 U.S. at 488). Before a petitioner may assert "ineffective assistance of *trial* or *appellate* counsel to establish cause for his procedural default, he must first present this argument as an independent claim to the state court." *Gonzales v. Hartley*, 396 Fed. Appx. 506, 508-509 (10th Cir. 2010) (citing *Murray*, 477 U.S. at 488-89).

For "prejudice," the petitioner must show "not merely that the errors at this trial constituted a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error

of constitutional dimensions." *United States v. Frady*, 456 US. 152, 170 (1982). A petitioner cannot establish prejudice when there is strong evidence of petitioner's guilt. *Id.* at 172.

For a "fundamental miscarriage of justice," petitioner must present both a constitutional claim and a colorable showing of factual innocence. *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986). To fall within this extremely narrow exception, it must be shown that "'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Magar v. Parker*, 490 F.3d 816, 820 (10th Cir. 2007) (quoting *Phillips v. Ferguson*, 182 F.3d 769, 774 (10th Cir. 1999)); *see Dretke v. Haley*, 541 U.S. 386, 393 (2004).

While Decker did include in his *pro se* 1507 motion his claims of prosecutorial and judicial misconduct and his allegations of over 20 instances of ineffective trial counsel, these same claims and all but three of these ineffective assistance allegations were not included as issues on his 1507 appeal. In finding these claims and allegations to have been waived or abandoned, the Kansas Court of Appeals employed an independent and adequate state procedural ground that is regularly followed. *See Livingston v. Kansas*, 407 Fed. Appx. 267, 2010 WL 4318817 at *2-*3 (10th Cir. 2010); *Soriano-Garcia v. McKune*, 2012 WL 405524 at *3-*4 (D. Kan. 2012). Thus, these claims are barred by procedural default unless this is excused by a showing of cause and prejudice or a miscarriage of justice.

Decker first asserts cause in the ineffectiveness of his appointed counsel on the 1507 appeal. Decker, however, cannot rely on the ineffectiveness of his 1507 appellate counsel:

> The trouble is *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), which holds that habeas petitioners have no constitutional right to post-conviction counsel in the first instance and so deficient performance by whatever counsel they may have ordinarily does not excuse procedural default. *Id.* at 752, 111 S.Ct. 2546; *see also Fleming v. Evans*, 481 F.3d 1249, 1255–56 (10th Cir. 2007). We say "ordinarily" because the Supreme Court has recently articulated a "limited qualification" to this previously unwavering rule. In *Martinez v. Ryan*, ––– U.S. ––––, 132 S.Ct. 1309, 1318–19, 182 L.Ed.2d 272 (2012), the Court held that when state law prohibits a defendant from presenting a claim of ineffective assistance of trial counsel on direct appeal, post-conviction counsel's deficient performance in failing to assert the claim on collateral review can serve as cause for the default. Central to the Court's rationale was that the defendant would have been constitutionally entitled to the aid of counsel to help him prepare his ineffective assistance of trial counsel claim on direct appeal. Id. at 1317. . . .
>
> But *Martinez* was equally clear about what it did not hold, and these limitations make clear the case provides no help to Mr. Banks. The Court said in no uncertain terms that "[t]he rule of Coleman governs in all but the limited circumstances recognized here." *Id.* at 1320. *Martinez* applies only to "a prisoner's procedural default of a claim of ineffective assistance *at trial*," not to claims of deficient performance by appellate counsel. Id. at 1315 (emphasis added).

*Banks v. Workman*, 692 F.3d 1133, 1147-1148 (10th Cir. 2012). The petitioner's claims for prosecutorial and judicial misconduct and ineffective assistance of appellate counsel do not come within the limited circumstances of *Martinez*. Even assuming that *Martinez* applied, the other reason for denying cause is "that an ineffective-assistance claim used to establish cause must itself be properly exhausted in the state courts." *McIntyre v. McKune*, 480 Fed. Appx. 486, 489 n.3 (10th Cir.) (citing *Edwards v.*

*Carpenter*, 529 U.S. 446, 451-52 (2000)), *cert. denied*, 133 S. Ct. 673 (2012). Thus, the petitioner is unable to show cause for his procedural default of these claims based on the ineffectiveness of his 1507 appellate counsel.

Alternatively, the petitioner argues cause for his default in that his motion to file a supplemental brief was denied by the Kansas Court of Appeals. The petitioner recognizes such an argument was rejected in *Livingston v. Kansas*, 407 Fed. Appx. 267, 273 n.5, 2010 WL 4318817 at *3 n.5 (10th Cir. 2010):

> In the alternative, Mr. Livingston argues that this issue actually is fully exhausted, as he raised it in a pro se supplemental brief that he submitted to the KCOA and in the Rule 6.09 Letter of Supplemental Authority submitted by his attorney. The district court considered this argument and found it unpersuasive. We agree that it misses the mark. Mr. Livingston's attorney raised a single argument in the collateral proceedings—a decision that Mr. Livingston is bound by. *See Faretta v. California*, 422 U.S. 806, 820, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) ( "[W]hen a defendant chooses to have a lawyer manage and present his case, law and tradition may allocate to the counsel the power to make binding decisions of trial strategy in many areas."); *see also Gripe v. City of Enid, Okla.*, 312 F.3d 1184, 1189 (10th Cir.2002) (noting the myriad of circumstances in which clients can be bound by the omission or inaction of their counsel). While Mr. Livingston did attempt to file a pro se brief with the state appellate court during the pendency of his post-conviction appeal, the KCOA denied the motion to supplement, and thus any arguments raised therein were not properly before the court.

The court is aware that "[s]ome courts have suggested that petitions [to supplement] like this are sufficient to give the state court fair notice of the federal claims, and that the problem (if any) arising from the state court's refusal to consider the brief is one of procedural bar." *McCormick v. Schmidt*,

469 Fed. Appx. 661, 662, 2012 WL 938599, at *2 (10th Cir.), *cert. denied*,

133 S. Ct. 578 (2012). The court is convinced for several reasons that

Decker has not shown cause from this attempted filing before the Kansas

Court of Appeals. First, while appellate counsel was appointed for Decker, he

could have filed a motion to remove counsel and asked to represent himself.

Kan. Sup. Ct. Rule 5.01. Instead, the petitioner tacitly accepted his counsel's

representation, and these circumstances favor binding the petitioner to his

counsel's tactical decision. The Supreme Court recently reiterated in

*Martinez*:

> *Coleman* held that "[n]egligence on the part of a prisoner's
> postconviction attorney does not qualify as 'cause.'" *Maples v.*
> *Thomas*, 565 U.S. ---, ---, 132 S. Ct. 912, 922 (2012). *Coleman*
> reasoned that "because the attorney is the prisoner's agent . . . under
> 'well-settled principles of agency law,' the principal bears the risk of
> negligent conduct on the part of his agent." *Maples, supra*, at 922.

132 S. Ct. at 1316.  Second, Decker has not shown he acted timely and

diligently in seeking leave to file a supplemental brief. Upon the filing of his

appellate counsel's original brief, the petitioner did not seek either to remove

his appointed counsel or to receive leave to file a supplemental brief. But

rather, he waited to seek leave until nearly six months after his counsel's

original brief was filed and nearly eight weeks after the state's response was

filed. Third, the record in this case does not show that Decker raised these

abandoned claims in his attempted supplemental filing with the court of

appeals or in any filing before the Kansas Supreme Court on review. It is

Decker's burden to show cause, and he has not carried that burden by

simply alleging or averring the substance of matters that are not part of the record. Alternatively, the court finds no plausible showing of prejudice. The court has reviewed Decker's abandoned claims, his citations to the record, and his conclusory arguments. They do not demonstrate that the claimed errors, individually or together, worked to his *actual* and substantial disadvantage and so infected his entire trial with error of constitutional dimensions.

As Decker explains, he is asserting actual innocence as "a gateway issue" through which he wants to pass in order to have otherwise barred constitutional claims considered on the merits. (Dk. 14, p. 17). "[P]risoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found [the prisoner] guilty beyond a reasonable doubt." *Woodward v. Cline*, 693 F.3d 1289, 1294 (10th Cir.) (quoting *House v. Bell*, 547 U.S. 518, 536–37, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006)) (internal quotation marks omitted), *cert. denied*, 133 S. Ct. 669 (2012). Thus, it falls on Decker to show this narrow exception for fundamental miscarriages of justice applies here by demonstrating that a constitutional violation has probably resulted in his conviction of a crime for which he is actually innocent.  This exception is rare and will "only be applied in the extraordinary case." *Schlup v. Delo*, 513 U.S. 298, 322 (1995). Decker "must identify evidence that affirmatively demonstrates his innocence,"

*Phillips v. Ferguson*, 182 F.3d 769, 774 (10th Cir. 1999) (citing *Schlup v. Delo*, 513 U.S. at 327), and "that does more than simply 'undermine the finding of guilt against' him," *id.* (quoting *Ballinger v. Kerby*, 3 F.3d 1371, 1375 (10th Cir. 1993)).

Decker's presentation is no more than his continuing profession of innocence and his repeated characterization of this case as a credibility call between him and the nine-year old victim who he alleges was coerced. The court has reviewed the record and concurs with the state appellate court's assessment on the sufficiency of the evidence. 2006 WL 2440004 at *4. The victim's mother testified that Decker had admitted to her the allegations of sexual contact with the victim and her testimony certainly supports the victim's allegations. *Id.* Decker's testimony at trial was little more than a blanket denial of any admissions to the mother. Decker has not alleged any "new evidence." From its review of the trial record and the Decker's current array of conclusory arguments, the court concludes the petitioner has not presented evidence that would make it more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. Thus, the petitioner's claim of actual innocence fails to open the gate for this court to reach his defaulted constitutional claims and fails to provide an independent basis for granting habeas corpus relief. The court finds that reasonable jurists could not debate the court's rejection of the procedurally defaulted claims on the well-established precedent set forth

above. Thus, the petitioner is not entitled to a certificate of appealability ("COA") on these rulings.

**CLAIMS OF INEFFECTIVE POST-CONVICTION COUNSEL**

"The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding under section 2254." 28 U.S.C. § 2254(i). "[M]ost naturally read, § 2254(i) prohibits a court from granting substantive habeas relief on the basis of a lawyer's ineffectiveness in post-conviction proceedings." *Martel v. Clair*, ---U.S.---, 132 S. Ct. 1276, 1287 n.3 (2012). Thus, it is plain that a § 2254 petitioner "cannot claim ineffective assistance or incompetence of post-conviction counsel." *Pecci v. Sloan*, 414 Fed. Appx. 180, 183 (10th Cir.), *cert. denied*, 132 S. Ct. 267 (2011).

The petitioner challenges the constitutionality of § 2254(i) arguing that it permits the Kansas courts to appoint attorneys who simply go through the motions and deny § 2254 litigants a fair presentation of their claims. He also argues that § 2254(i) is unconstitutional in assuming a defendant's Sixth and Fourteenth Amendments rights to counsel end with post-conviction proceedings. None of these arguments appear in Decker's original petition. He raises this argument for the first time in a separate pleading filed more than six months after his traverse. This filing "is not a proper vehicle to raise a new issue." *United States v. Moya-Breton*, 439 Fed. Appx. 711 (10th Cir. 2011) (citing in part *Jackson v. Duckworth*, 112 F.3d

878, 880 (7th Cir. 1997)), *cert. denied*, 132 S. Ct. 1775 (2012).

Consequently, the court need not address this issue. Assuming it did, however, there is no basis for habeas corpus relief on this claim. "The Constitution does not guarantee counsel on collateral review, *see Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987)." *Brooks v. Bobby*, 660 F.3d 959, 965 (6th Cir.), *cert. denied*, 132 S. Ct. 607 (2011). "There is no right to effective assistance of counsel under the Sixth and Fourteenth Amendments to the U.S. Constitution in collateral, post-conviction, state-court proceedings, and as such, the failures or infirmities of counsel at this stage generally are not attributable to the state." *Wooten v. Norris*, 578 F.3d 767, 778 (8th Cir. 2009)(citing *Coleman*, 501 U.S. at 754 ("There is no constitutional right to an attorney in state post-conviction proceedings."). The Supreme Court in "*Martinez* did not create a constitutional right to effective assistance of counsel in PCR proceedings." *Dicksons v. Ryan*, 688 F.3d 1054, 1073 (9th Cir. 2012). Petitioner presents no viable challenge to the constitutionality of § 2254(i). The court finds that reasonable jurists could not debate the court's plain application of the federal statute and rejection of the petitioner's ungrounded constitutional challenge. The court denies the petitioner a COA on this claim.

## INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

The third claim for relief in his § 2254 petition asserts his trial counsel provided ineffective assistance and lays out 17 separate paragraphs

of alleged deficiencies. On his 1507 appeal, the Kansas Court of Appeals found:

> With regard to ineffective assistance of trial counsel, Decker's pro se motion alleged 20 instances of ineffectiveness by Cooper. On appeal, however, Decker argues only some of these instances, leaving the majority of complaints he raised at the district court level unaddressed. These unaddressed ineffective assistance of trial counsel allegations are also deemed waived or abandoned. 285 Kan. at 998, 179 P.3d 457.

*Decker v. State*, 2010 WL 4977152 at *1. Thus, the appellate court considered only the following complaints of ineffectiveness: (1) failure to investigate information to the prejudice of Decker's investigation and presentation of witnesses, (2) failure to use the order of discovery and to provide Decker with a copy of the discovery and the case file to the prejudice of Decker's defense and preparation, and (3) failure to object to hearsay and to testimony concerning documents that were never admitted. *Id*.

The court finds that the ineffective assistance allegations that were not presented to the state appellate are procedurally defaulted and barred from federal habeas review for the same reasons discussed above and with this extended discussion of *Martinez* exception. As noted above, *Martinez* established a "limited qualification" to the rule from *Coleman* that the deficient performance of post-conviction counsel "ordinarily does not excuse procedural default." *Banks*, 692 F.3d at 1147-48. This limited qualification to the *Coleman* rule applies only when (1) there is a procedural

default of a claim of ineffective assistance at trial and (2) the state bars a

defendant from raising the ineffective assistance claims on direct appeal. *Id*.

There is another limiting circumstance that the Supreme Court noted in

*Martinez* that applies here:

> *Coleman*, however, did not present the occasion to apply this principle to determine whether attorney errors in initial-review collateral proceedings may qualify as cause for a procedural default. The alleged failure of counsel in *Coleman* was on appeal from an initial-review collateral proceeding, and in that proceeding the prisoner's claims had been addressed by the state habeas trial court. *See* 501 U.S., at 755, 111 S. Ct. 2546.
>
> As *Coleman* recognized, this marks a key difference between initial-review collateral proceedings and other kinds of collateral proceedings. When an attorney errs in initial-review collateral proceedings, it is likely that no state court at any level will hear the prisoner's claim. . . . And if counsel's errors in an initial-review collateral proceeding do not establish cause to excuse the procedural default in a federal habeas proceeding, no court will review the prisoner's claims.
>
> The same is not true when counsel errs in other kinds of postconviction proceedings. While counsel's errors in these proceedings preclude any further review of the prisoner's claim, the claim will have been addressed by one court, whether it be the trial court, the appellate court on direct review, or the trial court in an initial-review collateral proceeding. *See, e.g., Coleman, supra*, at 756, 111 S. Ct. 2546.

132 S. Ct. at 1316. Thus, according to *Martinez*, when the State requires a

prisoner to wait for a post-conviction proceeding to raise an ineffectiveness

of trial counsel claim, then a prisoner may establish cause for a default of

this claim by showing either that "the state courts did not appoint counsel in

the initial-review collateral proceeding" or that the "appointed counsel in the

initial-review collateral proceeding . . . was ineffective under the standards

of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 1029 (1984)." 132 S.

Ct. at 1318. Because Decker here is arguing cause based on his counsel's conduct on the 1507 appeal and not on a different counsel's conduct in the initial-review collateral proceeding before the trial court, the limited qualification in *Martinez* does not apply. Decker cannot show cause under the narrow limitation established in *Martinez*.

To prevail on a claim of ineffective assistance of trial counsel,[1] Decker "must show both:  (1) constitutionally deficient performance, by demonstrating that his counsel's conduct was objectively unreasonable; and (2) resulting prejudice, by demonstrating a reasonable probability that, but for counsel's unprofessional error(s), the result of the proceeding . . . would have been different." *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003) (citing *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)).  On the first prong, the courts recognize "a strong presumption that counsel's performance falls within the wide range of professional assistance" and require the defendant to prove "that counsel's representation was unreasonable under prevailing professional norms and that the challenged actions was not sound strategy." *Boyle v. McKune*, 544 F.3d 1132, 1138 (10th Cir. 2008) (internal quotation marks and citations omitted), *cert. denied*, 129 S. Ct. 1630 (2009). "'A particular decision not to investigate

---

[1] In arguing this claim, the petitioner summarily complains that the state courts erred in denying a hearing on his petition. "The state courts are, of course, the final arbiters of when and how a state prisoner can obtain an evidentiary hearing in their courts." *Boyle v. McKune*, 544 F.3d at 1135. Nothing that Decker argues elevates his concerns to a constitutional claim.

must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'" *Id.* (quoting *Strickland*, 466 U.S. at 691).

<u>State Court Holding—Failure to Investigate</u>

The 1507 trial court found that Decker had not identified specifically what his counsel failed to investigate and had not explained how any such material or witnesses could have changed the outcome. The Kansas Court of Appeals noted that Decker had listed witnesses and various documents and summarily claimed his trial counsel, Cooper, had failed to investigate them. Nonetheless, the appellate panel agreed:

> We agree that Decker's claim was conclusory. Decker provided no reason or factual basis to believe that any of these materials should have been investigated or considered by Cooper [defense counsel] as relevant or material to this sex crimes case. Moreover, without some claim of relevance or materiality, Decker also failed to show the result of his trial would have been different had Cooper investigated these materials. *See Harris* [*v. State*], 288 Kan. [414] at 416, 204 P.3d 557 [(2009)].

2010 WL 4977152 at *3.

<u>Habeas Review—Failure to Investigate</u>

The court finds that the Kansas Court of Appeals' decision was based on a reasonable determination of the record and reading of the petitioner's filing and was consistent with the *Strickland* standard. Simply listing possible documents and records and identifying witnesses by name or profession utterly fail to make arguable showings of either *Strickland* prong. For an ineffectiveness challenge based on failure to investigate, Decker must

establish that his counsel's decision was unreasonable from counsel's perspective at the time the decision was made. *See Anderson v. Attorney Gen. of Kan.*, 425 F.3d 853, 859 (10th Cir. 2005). Decker's arguments do not even purport to make such a showing. Moreover, without some claim of materiality and relevance to the possible evidence, Decker has not shown how any alleged deficiencies with his counsel's investigation prejudiced his defense.

Decker does not articulate what expert witness testimony should have been presented on his behalf. "*Strickland* does not require 'for every prosecution expert an equal and opposite expert from the defense.'" *Hughes v. Kansas Attorney General*, 2013 WL 101583 at *5 (D. Kan. 2013) (quoting *Harrington v. Richter*, ---U.S. ---, 131 S. Ct. 770, 791 (2011)). Decker's trial counsel effectively cross-examined the state's expert and established that nothing from the physical examination corroborated the victim's account. (Rec. Vol. 5, pp. 81-82). In short, conclusory allegations, like Decker's, will not suffice on the prejudice prong. *Kidwell v. Martin*, 480 Fed. Appx. 929, 934, 2012 WL 1825185 (10th Cir. 2012) (citing in part *Stafford v. Saffle*, 34 F.3d 1557, 1564-65 (10th Cir.), *cert. denied*, 514 U.S. 1099 (1994)). The court finds that reasonable jurists could not debate the court's rejection of this claim for federal relief and that the petitioner is not entitled to COA on this claim.

## State Court Holding--Failure to Use Discovery Order and To Provide Defendant with Copy

The 1507 trial court found that petitioner failed to identify what "discovery" his counsel did not request though the defendant was entitled to it. (Rec. No. 07-4710, p. 67). The Kansas Court of Appeals agreed and added:

> Moreover, to show ineffectiveness it was also incumbent for Decker to assert that this discovery was not known or obtained through other means and was relevant material to his defense. Decker made no such allegations. Decker also fails to show it was ineffective for Cooper to refuse to provide him with copies of discovery and the case file. We know of no such general legal requirement and Decker does not point us to any case law in support of this claim. Finally, once again, we note that Decker also failed to show how these claimed discovery failures somehow prejudice him in the preparation of his defense or in assisting Cooper at trial.

2010 WL 4977152 at *3.

## Habeas Review—Failure to Use Discovery Order and to Provide Defendant with Copy

The court finds the state court decisions are "well within the bounds of a reasonable judicial determination." *Harrington v. Richter*, 131 S. Ct. at 789. Decker failed to identify what evidence that his counsel failed to obtain and how this omitted evidence was relevant or material to his defense. Decker has not articulated how the lack of his own copy of the evidence impaired his counsel's performance, his ability to assist his counsel, or his capacity for making informed decisions at trial. Decker offers no authority for the proposition that counsel is ineffective unless the client is provided a full personal copy of all discovery. Finally, Decker comes forward

with no substantive, meaningful allegations on how the trial would have gone differently if Decker had a copy of the evidence. The vague and conclusory allegations offer no tenable argument on either *Strickland* prong. Because reasonable jurists could not debate the court's rejection of this claim, the court denies a COA on it.

State Court Holding—Failure to Object

The 1507 trial court found that Decker did "not explain what counsel should have objected to or how the objections would have changed the outcome." (Rec. No. 07-4710, p. 67). The Kansas Court of Appeals held:

> Decker did provide, in his pro se motion, extensive lists of transcript citations and tangible items. On appeal Decker makes general arguments based on these lists, maintaining for example that he "cited no less than twenty-five instances where hearsay testimony in violation of the best evidence rule were [ sic ] allowed to pass by trial counsel." This argument differs from Decker's summary argument below, where he claimed the same citations showed Cooper's failure "to enter objections to the presentation of real/physical evidence by testimony only."
>
> Whatever the legal basis for his argument, Decker simply cited the transcript without explaining how specific testimony violated the rules of evidence. This deficiency is fatal to Decker's claim. Some citations were to as many as 20 pages of transcript, and others, while more limited, were not obviously objectionable. For example, Decker cited the following as a discrete instance of objectionable testimony: "Q. Miss Phillips, were you present when the Derby Police Department came and served the search warrant on September 1st? A. Yes." We see no reason why Cooper was ineffective for failing to object to this question or answer, and Decker does not explain any ineffectiveness. In sum, Decker has wholly failed to correlate his attorney's ineffectiveness in failing to object to certain testimony (for whatever reason) with specific references to the trial record. We will not speculate as to trial counsel's ineffectiveness or how such ineffectiveness prejudiced Decker's trial.

2010 WL 4977152 at *3.

<u>Habeas Review—Failure to Object</u>

       This court has reviewed Decker's numerous record citations that he groups under arguments as "unlawful evidence," "vouching," lack of "physical evidence to corroborate," and "inflammatory testimony." (Dk. 15, pp. 6-7). The court finds that the Kansas Court of Appeals' conclusion that the petitioner's arguments wholly fail to support this claim is "well within the bounds of a reasonable judicial determination." *Harrington*, 131 S. Ct. at 789. Other than citing pages of testimony and grouping them under vague titles, Decker does not identify specifically the testimony he considers objectionable and the evidentiary basis for the objection. Such conclusory allegations are insufficient, and it is not the court's responsibility to act as petitioner's advocate and fashion the factual and legal arguments to support them. *See Snow v. Sirmons*, 474 F.3d 693, 724-25 (10th Cir. 2007); *Humphreys v. Gibson*, 261 F.3d 1016, 1022 n.2 (10th Cir. 2001) ("[C]onclusory allegations, . . . , are insufficient to warrant habeas relief."). It is the petitioner's "burden of showing that counsel's action or inaction was not based on a valid strategic choice." *Bullock v. Carver*, 297 F.3d 1036, 1047 (10th Cir.), *cert. denied*, 537 U.S. 1093 (2002), and Decker's filings do not even attempt any such showing. From its review of the record citations, the court has found no examples of counsel's failure to object that were so unreasonable as to be constitutionally deficient legal representation. For that matter, Decker makes no showing of how any purported errors in not

objecting were so serious as to deprive him of a fair trial such that there is a reasonable probability but for counsel's errors, the result of the proceeding would have been different. Not only is the Kansas Court of Appeals' decision reasonable, but no reasonable jurists could debate the denial of habeas relief here. The petitioner is denied a COA on this claim.

**EVIDENTIARY HEARING**

Because all claims and arguments here have been resolved on the record, there is no need for an evidentiary hearing. *Anderson*, 425 F.3d at 859. "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). The court denies any request for an evidentiary hearing.

**CERTIFICATE OF APPEALABILITY**

Rule 11 of the Rules Governing Section 2254 Proceedings states that the court must issue or deny a COA when it enters a final order adverse to the applicant. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court has rejected the constitutional claims on the merits, a petitioner makes that showing by demonstrating that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see United States v. Bedford*, 628 F.3d

1232 (10th Cir. 2010). When a claim is denied on procedural grounds, "the petitioner seeking a COA must show both 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Gonzalez v. Thaler*, --- U.S. ---, 132 S. Ct. 641, 648 (2012) (quoting *Slack*, 529 U.S. at 484). Petitioner has not met these standards as to any issue presented, so no certificate of appealability shall be granted.

IT IS THEREFORE ORDERED that the petition for habeas corpus relief under 28 U.S.C. § 2254 (Dk.1) is denied.

Dated this 14th day of March, 2013, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge